Good morning. We'll call the first case of the morning, which is United States of America versus Kevin Abbott. Mr. Wilder. Rotator cuff surgery, Mr. Wilder. Been there, done that. Second round for me, not acting my age. I would like, first of all, to reserve five minutes into my argument for rebuttal. My name may please the court. My name is Stuart Wilder. I'm from Doylestown, Pennsylvania. I am court-appointed counsel for Mr. Abbott. Mr. Abbott specifically instructed me to express his gratitude to the court for granting oral argument in this case. This is obviously a very important matter to him. I would like to start out, I normally don't read things in my arguments to the court, but I think it's important to refer to something that Justice Kennedy said in his concurrence. He said, when concurring with Justice Kagan's opinion, which was an eight-to-one decision, he said, the effect of today's decision in DECAMP is that an unspecified number, but likely a large number of state criminal statutes that are indivisible, but that often do reach serious crimes otherwise subject to ACCA's provisions, must now be amended by state legislatures. Otherwise, they will not meet formal requirements, even though they would have come within ACCA's terms if they had been drafted in a different way. Now, I think he's saying it's a big presumption there that state legislators are worried about whether or not their laws are going to constitute predicate statutes or crimes for ACCA, but I think that that's an accurate description of what the Supreme Court's clarification of the use of the modified categorical approach resulted in when they announced DECAMP. Okay, well, let me start, if I may, just by trying to satisfy myself that I understand part of your argument. Is your argument that 780-113A30 is a general crime that simply outlaws the possession of any type of controlled substance with the intent to deliver? Controlled or counterfeit substance with intent to deliver, yes. I mean, there's that's, yes. I mean, so your position would be then in terms of the categorical approach that we apply, that we simply read the Pennsylvania Act and we stop there. But what about the definition of controlled substance as it is contained in the Pennsylvania statute? I mean, it specifically incorporates Schedules I through V, and that provides a whole list of opportunities. As in the federal system, when you look at PERD and statutes, the Pennsylvania Consolidated Statutes now, every chapter starts out with a definitional section to define the terms that are being used in there. I submit that the schedules, the controlled substance schedules are just like another definition of what they're talking about there. They also, in the end, they do go to penalty. It's important when a judge is sentencing somebody that they look at that Pennsylvania judge to determine what the defendant was convicted of. However, as a matter of proof, what the jury hears, as prior Pennsylvania cases show, if there's one drug in the information and they prove another drug at trial, the problem is not what's in the information. The problem is notice to the defendant. Okay, there was, I cite, I think, three cases in my brief where the trial started out, there was one drug in the information, but another drug was proven at trial. Now, there was, in all three cases, that was not a problem for the appellate courts, for the Pennsylvania Superior or Supreme Courts. But that's not our situation. I'm trying to remember the name of the Pennsylvania case that you've cited, but that was really about the difference between the proof that was offered at trial and what was set forth in the indictment, right? Right. And that was the issue in that case. Yes. That's not what we're talking about here. We're looking at a federal statute that requires us to determine what a serious drug offense is, right? Yes. And we've got to look to 780-113 and we apply either the categorical approach or the modified categorical approach. And I'm trying to determine how you can see all these various alternatives that are available under 780-113-830 and not see a case that cries out for application of the modified categorical approach. Well, it goes to, again, how, let's look at this case. This is a case, a very good case to show why it doesn't cry out for that. The only information that we have in this case as to what the substance was, was the actual filed information. Mr. Abbott had a non-jury trial and there was a verdict sheet. And, in fact, at that non-jury trial, there was a stipulation as to what the drug was, wasn't there? I don't recall that, but I do know that there was a, that the information's there and that says the, you know, the crack cocaine. This court, I think, in Tucker talked about how, and I think information can be looked at to guide what happens at a Pennsylvania trial. That's not really the case. If you sit in on Pennsylvania trials and Pennsylvania criminal trials and see what's happening at them. You've got two old Pennsylvania DAs and Pennsylvania common, well, not old. Judge Sirica doesn't qualify for that. I do, but we've seen our share of those. Okay, well, then you know things change during the trial and it doesn't get written on the information. It may not even get written down anywhere sometimes. Just because that's what happens in CP courtrooms because, you know, that's the way the forms are. I'm not sure I understand what your point is. Well, my point is basically is that in this case, in Mr. Abbott's case, I don't think that he's convicted of this statute, which only defines, only makes criminal the, as I said, creating, delivering, or possessing with intent to deliver a counterfeit or a controlled substance. All right, Mr. Wilder, did we or did we not make clear in both Garcia and Evans that 730-113-A30 is a divisible statute? You did, but I think that that DECAMP. How does DECAMP change the game? What is it in DECAMP that you find that changes the game? DECAMP says look at the statute and see if under that statute, if the defendant had to be convicted of something with the elements of the generic crimes defined in ACCA. Was DECAMP a divisible statute or an indivisible statute? It was an indivisible statute. What happened there was that. Doesn't that change everything, though? That's what, again, what is divisible? Well, I think that DECAMP changes what is a divisible statute anymore. I think that, again, the court, I think what the Ninth Circuit tried to do in that case is you can't apply the modified categorical approach unless the statute's divisible, okay? And that's what the Ninth Circuit, I think, tried to do. And the Supreme Court came back and said, no, look at the elements of the statute. Don't go beyond that. If there's more than one way you can convict the person to, if there's more than one element or more elements in there than you need to get to the ACCA predicate, then you can look further into the record. But in this case, again, I don't think after DECAMP that this statute can be called divisible. And I think that Justice Kennedy highlights that point. So your view is this statute's not divisible, correct? Yeah, it's not divisible. That's correct, Your Honor. Even though we've said before that it is. Even though you've said before it is, you have to look at it again after DECAMP. This won't be the first time, this won't be the first case or the first statute you're going to be looking at this in. This is going to be coming up a lot. And even though in 2013, at least the Pennsylvania Superior Court, a decision says that the type of drug, if it increases, it has an impact on the mandatory minimum or maximum, is an element. We can't ignore that. That tells us also not only does the precedent of the circuit suggest it's divisible, but it's being treated as an element, what the drug is. So how do you reconcile? That's the interpretation of the court who applies that statute all the time. Because I think this court has a responsibility to look at, I realize that you rely on the state courts to interpret the state statutes. But we're looking here at the interpretation of how a federal enhancement applies. And if Pennsylvania legislators want their convictions to count under ACCA, as Justice Kennedy said, they're going to have to rewrite it to list these, for example, listed under 113.830. These are the alternative substances you can be convicted of for this. You go beyond that, I think you engage in the kind of fact-finding going beyond the record that the Supreme Court didn't want. I would point out that this court in October, after all the briefs in this case were filed, in a case called Macuana. It is a non-presidential opinion. It's at 455 Federal Appendix 671. And it came out four days before this court's opinion in Blair, which was the other day camp opinion from this court. But that's an immigration case, which I think is closer to this case, where they reversed a determination, this court reversed a determination of the Bureau of Immigration Appeals. Because there were alternative scenarios under which this defendant could have been, or this prospective deportee, could have been convicted under a federal crime. And I think that's a better example of what you have to do. You can't, for this statute, necessarily rely on what the state says is an element or not an element of the crime when determining how far you go in applying, or whether or not to apply the modified categorical approach. You were talking in response to one of the questions about the definition of controlled substance in this Pennsylvania statute. Is it your view it would all of a sudden become divisible if, instead of referring the reader back to the definitional section, the statute had the conduct at issue, the manufacturer distribution, et cetera. And instead of using the word controlled substance, copied and cut right in there all the schedules and the resulting penalties? That would make it divisible? That would be a different situation, yes. So cross-referencing by definition makes it indivisible from your point of view? Cross-referencing, and it does, because when you charge a jury in a case like this, if you look at the standard suggested jury instructions, again, you'll see that's putting the substance in as optional on this case. It's still optional under Apprendi and Aleene and all of that? Yes, I mean, you can ask for it. I mean, it's a defendant demands it. I suppose there's situations where that would have to go in. The jury would have to find it under Apprendi, now Aleene, for different reasons. But in Mr. Abbott's case, Mr. Abbott's case, the way that came down and what the records say in this case and what the record of his conviction says, I submit that the inquiry ends when you look at that verdict sheet. And therefore, the act should not have been applied. Thank you very much. We'll have you back on rebuttal, Mr. Wilder. Thank you. Good morning, Your Honor. May I please the Court? Robert Zalzmer on behalf of the government. Your Honor, I think it's very important to define the issue before the Court. And there are two possible issues. And the defense, with all respect to my friend, Mr. Wilder, I think presents something of a moving target. And I understand their argument today differently than we did when we prepared our brief. The two possible issues, issue number one is, is this a divisible statute? Do we apply the modified categorical approach in deciding whether these prior drug convictions under state law? Is it? And what do any of our prior decisions say about it? It is absolutely a divisible statute. This Court has, as Your Honor has already mentioned, explicitly held that it's divisible. And it's divisible based on the penalty, which varies depending on the controlled substance. And as one of our colleagues would say, isn't that game set and match, unless the camp changes the game here? That's exactly right. I think she would also say three strikes, you're out. Perhaps if it was the Mets, yeah. That's right. And the, so yes, and the camp does not change. And I'll actually make a very, a bold statement, which is, the camp really has no effect on the law in this circuit. This circuit's law prior to the camp was consistent with what the Supreme Court held in the camp, which is that you can only apply the modified categorical approach where you have a divisible statute. Does the camp change the categorical approach slash modified categorical approach jurisprudence of the Supreme Court in any way other than to perhaps make a forceful statement of the narrow situations in which the modified approach should be applied? No, it does not. According to the Supreme Court, the Ninth Circuit here, perhaps not for the first time, was out of line with what the Supreme Court had pretty clearly said in prior decisions. This court was faithful to what the Supreme Court had said. Most recently, when I saw this panel, I looked at the Mahone case, which Judge Smith, you authored in 2011, which is sort of a compendium of where the Third Circuit had been for many years, really building off the work that Judge Becker did in the Singe versus Ashcroft case, which is cited many times. And if you read that, it may not use the exact same language as the Supreme Court, but it's saying the exact same thing, which is we look to a statute to see whether it can be outlined, whether we can break up the elements into an outline, and then we look at the state offense to see where it falls within that outline. This court had never done what the Ninth Circuit did in the camp and said we see one big indivisible statute, but we'll look at the underlying facts and see whether that would have amounted to an offense, a generic offense under HACA. This court's precedent is fully consistent with the camp, and I think as Your Honor suggests, the camp is consistent with the prior Supreme Court precedent. It's just a very clear explanation of what courts have been required to do. And what they've always been required to do, as Mahone says and Singe and all the other cases, is look at the state statute, outline it, and see if you have a situation where the modified categorical approach applies, because some offenses are HACA predicates and some aren't. This court has already done the work with regard to the Pennsylvania statute, the drug statute. It's plainly divisible. The last suggestion that Mr. Wilder made in response to Judge Schwartz's question was, well, maybe it would be different if you took what's in F and moved it into A. There is no precedent for that sort of formalism. You look at the statute, you break it down, you outline it, as Mahone says. There are many cases in which the penalty provision actually comes up one or two statutes later. But of course, that's still the point of division, according to this court's precedent. In fact, there's a Supreme Court case I looked at yesterday, United States v. Rodriguez, which was decided in 2008, which that's the whole thing that the 10-year requirement, the maximum of 10 years under HACA for a serious drug offense, can be based on a recidivism provision of state law. If the person was looking at five years in state court, but doubled to 10 because of his recidivism in state court, that works for purposes of HACA. Rodriguez actually involved a Washington statute, Washington state statute, in which the penalty provision was in a completely different statute. But that didn't hinder the Supreme Court at all. We clearly have a divisible statute there. So the camp change is nothing. And when I read the defendant's briefs in this case, both before the district court and in this court, I did not see the defense presenting this argument that's long been settled of whether this section is a divisible statute or not. Instead, it was a second issue. And the second issue is, are the documents that we have in this case enough to show that the person was charged with that divisible part of the Pennsylvania statute that involves crack cocaine? And we had the charging document. Correct. We have the charging document. Now that's a shepherd issue. That's not a decamp issue. So that's the second issue. Are the documents that we were permitted to consult under shepherd, are they sufficient to tell us which part of this divisible statute? That issue, as to this case, was explicitly resolved in the Tucker case. This case is a dead-on replay of Tucker. And I haven't seen a suggestion as to how this case differs in any way. Tucker made the same argument that we perceived in the brief here, which was that, yes, you mentioned crack cocaine in the charging document. And it's indisputable that all three of Mr. Abbott's prior convictions have a charging document that limits the charge to crack cocaine. So Tucker's argument was, yes, the charging document is clear, but that's not good enough. Because we know in Pennsylvania, you can go to trial and you can prove a different substance. And therefore, maybe they didn't convict me of the substance in the charge. Same argument as what we thought. Am I not correct that in the 2000 prosecution, there was a stipulation at the non-jury trial as to what the drug was? I don't recall that, Your Honor. And that's certainly not, we didn't present that in the record here. What we presented here in the appendix is the charging document and the final judgment. And that's what Tucker resolved. Tucker explicitly held that this is sufficient, that in Pennsylvania, under Pennsylvania law, your proof is limited to the charge, including the nature of the controlled substance. And the one case on which Tucker relied, and the one case on which Mr. Abbott relies, Commonwealth v. Kelly. That was a variance. It was a variance case. It's not our case. That's right. And it said a variance won't preclude the conviction. And Kelly's even more different, because Kelly was a possession case under Pennsylvania law, not a distribution case. And possession of any substance yields the same penalty. So we didn't have the issue here of where you need a charge in order to have a different penalty. Judge Schwartz's reference to Apprendi and Allene is right on point. Under state, under the law, since Apprendi, and that includes the conviction that Mr. Abbott challenges, which was entered after Apprendi. Under Apprendi, the state has to prove the nature of the controlled substance in order to increase the maximum penalty. Allene explicitly says it. It's an element of a more serious offense. And so there is no doubt, based on Tucker, that he was charged with it. He was convicted of it. He had these three predicates. And he was appropriately sentenced as an armed criminal. So those are the two issues here that we now have. Is it a divisible statute? Yes, it is. DeKalb doesn't change that. And do the charging documents sufficient to tell us? And Tucker resolves that. There's nothing different about this case from Tucker. And we're pleased to have the opportunity to argue the issue again. But it's really the same result as what's found by the court in Tucker. Unless the court has further questions. No. Thank you very much. Thank you, Your Honor. Mr. Wilder, rebuttal? I do want to first make clear to the court that we're not abandoning our argument that just using the information was insufficient. I think Justice Holmes said the life of the law is not logic, it is experience. And I know that two members of this panel have that experience in courts of common pleas and know what happens there. This case was tried. He was indicted before Apprendi. He was tried two months after Apprendi in the Philadelphia Court of Common Pleas. I think it's a bit of a stretch to think that this was on top most on their minds. If it had been, you would have seen it on the verdict sheet. It wasn't there. So, again, I don't think that just looking at an information and insufficient, despite what Tucker says, you put a lot of faith. Our penitentiary practice works different. We know that. I'm not going to beat a dead horse in that one, but it does work differently. And the information does not tell you what a person was convicted of, if you see that count, because things happen during trial. There's oral motions to modify the information. There's stipulations made, whatever. Again, I do not recall the stipulation that you referred to, Judge Smith. Maybe, sir, I don't remember that being in the record. Finally, as to what changed with Day Camp, Day Camp did not change the law, but it was a message to the courts, I think, to pull back and not be so aggressive in trying to parse these statutes. Just look at the statute itself. And if they did not have to meet all of the elements of the act of predicate crime to convict a defendant, then you can't go to the modified categorical approach. You can't look at the other documents. I ask you, again, to look at that Makwana case. I will file a letter brief to the court once. I don't know that it's really necessary, but I think it does inform that. Again, you'll be seeing a lot of that. I look forward to your decision in this. I'm sure it's going to be the first in a number of them that will be coming down in the next few years. If the court has any questions, I'm done. Thank you. Thank you very much, Mr. Wilder. Thank you, Mr. Zosmer. Thank you both for a well-argued case, which we will take under a